# EXHIBIT 8

―1―

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TEXAS
 2                         WACO DIVISION

 3   SILENT COMMUNICATIONS,  *
        LLC                  *
 4                           *      September 16, 2022
     VS.                     *
 5                           * CIVIL ACTION NO. 6:22-CV-252
     BLACKBERRY CORPORATION  *
 6
                  BEFORE THE HONORABLE ALAN D ALBRIGHT
 7                   MOTIONS HEARING (via Zoom)

 8   APPEARANCES:

 9   For the Plaintiff:   Jeffrey Kubiak, Esq.
                          William P. Ramey III, Esq.
10                        Ramey, LLP
                          5020 Montose Blvd., Suite 800
11                        Houston, TX 77006

12   For the Defendant:   Kurt Pankratz, Esq.
                          Morgan G. Mayne, Esq.
13                        Baker Botts
                          2001 Ross Ave., Suite 900
14                        Dallas, TX 75206

15   Court Reporter:      Kristie M. Davis, CRR, RMR
                          PO Box 20994
16                        Waco, Texas 76702-0994
                          (254) 340-6114
17

18      Proceedings recorded by mechanical stenography,

09:31 19   transcript produced by computer-aided transcription.

09:31 20

21

22

23

24

25
```

2

```
09:30   1              DEPUTY CLERK:  A civil action in Case
09:30   2   6:22-CV-252, Silent Communications, LLC versus
09:30   3   BlackBerry Corporation.  Case called for a discovery
09:30   4   hearing.
09:30   5              THE COURT:  And announcements from
09:30   6   counsel, please.
09:30   7              MR. RAMEY:  For the plaintiff, Your
09:30   8   Honor, good morning.  This is Bill Ramey.  And with me
09:30   9   today, my partner Jeff Kubiak.
09:31  10              THE COURT:  Mr. Ramey, I can just barely
09:31  11   see your head.  I'm not sure how you're sitting, but it
09:31  12   looks -- it kind of looks like you're on a space pod
09:31  13   for some reason.
09:31  14              MR. RAMEY:  Would you like me just to
09:31  15   turn that camera off and just listen in?  Would that
09:31  16   make you more comfortable?
09:31  17              THE COURT:  No.  I just wanted you to
09:31  18   know I can just barely see your head.  You're good now.
09:31  19              MR. RAMEY:  Thank you.
09:31  20              MR. PANKRATZ:  Good morning, Your Honor.
09:31  21   For defendant BlackBerry, you have Kurt Pankratz with
09:31  22   Baker Botts.  Joining me, my colleague Morgan Mayne who
09:31  23   will be doing the substantive discussion today.
09:31  24              And also joining us from Blackberry
09:31  25   in-house is Mr. Luke Stafford.
```

—3—

```
09:31   1                    We're ready to proceed.
09:31   2                    THE COURT:  I always welcome clients when
09:31   3    they attend.  I think that's important.
09:31   4                    Which office are you in?
09:31   5                    MR. PANKRATZ:  I'm in the Baker -- Dallas
09:31   6    office, as is Morgan.  Although I think she's joining
09:31   7    us from our Washington D.C. office today.
09:31   8                    THE COURT:  Very good.  Give me one
09:31   9    second to get organized.  I'll be right back.
09:32  10                    Okay.  I'll hear first from counsel for
09:32  11    BlackBerry.
09:32  12                    MR. PANKRATZ:  Certainly, Your Honor.
09:32  13    And I'll turn it over to Ms. Mayne in just one second.
09:32  14    I wanted to raise one procedural issue.  You may have
09:32  15    seen on the docket that we actually believe should
09:32  16    dispose of the entire case.
09:32  17                    BlackBerry filed an answer and
09:32  18    counterclaims on August 5th.  Silent failed to answer
09:32  19    those by the deadline of August 26th.
09:32  20                    BlackBerry has now filed a request for
09:32  21    entry of default.  We understand Silent will be moving
09:32  22    for a retroactive extension on its deadline to answer.
09:32  23    And wanted to let Your Honor know that BlackBerry will
09:32  24    be opposing that.
09:32  25                    I will turn it -- unless Your Honor has
```

4

```
09:32  1   any questions on that, I will turn it over to Ms. Mayne
09:32  2   to discuss the discovery dispute.
09:32  3                  THE COURT:  Thank you.
09:32  4                  MS. MAYNE:  Let me share my screen.
09:32  5                  THE COURT:  Welcome back, Ms. Mayne.
09:33  6                  MS. MAYNE:  Thank you.
09:33  7                  Congratulations on your new addition to
09:33  8   the Austin office.  So that's good news too.
09:33  9                  MR. PANKRATZ:  Thank you, Your Honor.
09:33  10  He's a great -- great lawyer and a great addition.
09:33  11                 MS. MAYNE:  All right.  Your Honor,
09:33  12  Silent's infringement contentions fail to provide
09:33  13  BlackBerry with adequate notice of how the accused
09:33  14  BlackBerry Hub product purportedly infringes the
09:33  15  asserted patents and, therefore, violates this Court's
09:33  16  local rules.
09:33  17                 To provide some context, this is not the
09:33  18  first time Silent has been informed of its failure to
09:33  19  present a plausible theory of infringement.
09:33  20                 Months before Silent ever served its
09:33  21  initial infringement contentions and on several
09:33  22  different occasions, BlackBerry explicitly identified
09:33  23  many deficiencies in Silent's infringement theories.
09:33  24                 Despite having notice well in advance,
09:33  25  Silent's infringement contentions failed to show how
```

5

09:34  1   the accused product could possibly meet each element of
09:34  2   the asserted claims.
09:34  3                   (Clarification by Reporter.)
09:34  4                   MS. MAYNE:  In its infringement
09:34  5   contentions, Silent asserts 12 claims.  Silent's claim
09:34  6   chart consists of a total of 19 pages, all of which are
09:34  7   filled with unexplained screenshots followed by
09:34  8   boilerplate statements that the reference from which
09:34  9   the screenshot was taken discloses the respective claim
09:34  10  element.
09:34  11                  While there are deficiencies in Silent's
09:34  12  infringement analysis for every asserted claim, which
09:34  13  we outline in Exhibits 2 and 3 to the discovery dispute
09:34  14  chart, I'd like to focus on one element of Independent
09:34  15  Claim 1.
09:34  16                  Claim 1 requires:  A mobile phone
09:35  17  comprising a synchronization engine adapted to
09:35  18  correlate a first profile contained on a first social
09:35  19  networking site with a first contact stored in a local
09:35  20  memory; retrieve from the first social networking site
09:35  21  data contained in the first profile; and associate the
09:35  22  retrieved data of the first contact.
09:35  23                  I've shown on this slide Silent's
09:35  24  infringement contentions for this element include a
09:35  25  single screenshot which I have split up here for

6

| | | |
|---|---|---|
| 09:35 | 1 | visibility purposes.  The screenshot includes a phone |
| 09:35 | 2 | box layout and a descriptor box, which is apparently |
| 09:35 | 3 | taken from a 2019 blog post. |
| 09:35 | 4 |        The screenshot is followed by a cursory |
| 09:35 | 5 | statement that the reference describes how the claim |
| 09:35 | 6 | elements are met.  However, as you can see, nothing in |
| 09:35 | 7 | the screenshot or even the blog post itself provides |
| 09:35 | 8 | any indication of a synchronization engine, let alone |
| 09:36 | 9 | one that is adapted to perform each of the recited |
| 09:36 | 10 | functions. |
| 09:36 | 11 |        For example, the screenshot provides no |
| 09:36 | 12 | indication of how a social networking profile is |
| 09:36 | 13 | correlated with a phone contact, how data from the |
| 09:36 | 14 | social networking profile is retrieved -- |
| 09:36 | 15 |        THE COURT:  Ms. Mayne, maybe it's -- |
| 09:36 | 16 | you're breaking up a little bit and I'm having a hard |
| 09:36 | 17 | time following you.  I hear most of it, but towards the |
| 09:36 | 18 | end of your sentences, I'm not sure what it is, you're |
| 09:36 | 19 | breaking up and I'm just -- I'm not hearing you. |
| 09:36 | 20 |        (Clarification by Reporter.) |
| 09:37 | 21 |        MS. MAYNE:  Okay.  So going back to the |
| 09:37 | 22 | screenshot, as you can see, there's no indication of |
| 09:37 | 23 | how a social networking profile is correlated with a |
| 09:37 | 24 | phone contact, how data from the social networking |
| 09:37 | 25 | profile is retrieved or how the retrieved data is |

```
09:37  1   associated with the phone contact.
09:37  2              This is the entirety of Silent's
09:37  3   allegations for this claim element.  It simply fails to
09:37  4   provide adequate notice of how the BlackBerry Hub
09:37  5   product allegedly satisfies this element.
09:38  6              And Silent's infringement contentions for
09:38  7   substantially similar elements in independent Claim 11
09:38  8   suffer from the same deficiencies, as do its analysis
09:38  9   of all other elements of the asserted claims.
09:38  10             In sum, Your Honor, Silent has not
09:38  11  provided any plausible theory of infringement, nor can
09:38  12  it.  BlackBerry made its source code available for
09:38  13  inspection over a month ago to prove that it does not
09:38  14  infringe.  Silent hasn't --
09:38  15             THE COURT:  Let me interrupt you just for
09:38  16  a second.  If you'd leave that up.
09:38  17             Mr. Ramey, I understand what counsel's
09:38  18  argument is as to why this is inadequate.  Can you
09:38  19  explain to me why this -- what -- the representation,
09:38  20  as I understand it, is this is all that plaintiff sent
09:38  21  to BlackBerry to support that there's infringement of
09:38  22  the claim terms.
09:38  23             Can you walk me through how this does
09:38  24  that on that -- on this claim?
09:39  25             MR. RAMEY:  Yes, sure.  And I'm going to
```

8

```
09:39  1    let Mr. Kubiak do this argument, if that's okay with
09:39  2    the Court.
09:39  3                    THE COURT:  Sure.
09:39  4                    MR. KUBIAK:  Good morning, Your Honor.
09:39  5                    So the way that we see it -- Silent -- is
09:39  6    that the defendant is either trying to add claim terms
09:39  7    to what is a mobile phone so that it really -- it's
09:39  8    trying to add technical terms and ring it in to what's
09:39  9    a mobile phone which makes this a claim construction
09:39  10   issue, which it's a little bit premature.
09:39  11                   To the extent that they are unclear as to
09:39  12   what the infringement contention is, then the defendant
09:39  13   has filed their motion to dismiss.  And this would have
09:39  14   been appropriate in the motion to dismiss.  It's not
09:39  15   really a discovery dispute, per se.  This would be
09:39  16   covered under the motion to dismiss.
09:39  17                   That's pretty much it, those two points.
09:40  18   It's either in claim construction or it should have
09:40  19   been brought in a motion to dismiss.
09:40  20                   THE COURT:  I don't think you answered my
09:40  21   question.  You have sent this, as I understand it, and
09:40  22   you're not disputing it, plaintiff sent over this slide
09:40  23   as your way of explaining the BlackBerry, what the --
09:40  24   your infringement contentions for that claim are.
09:40  25                   And what I asked you was for you to walk
```

9

```
09:40   1    me through this and tell me how it does.
09:40   2                 MR. KUBIAK:  Not a question I was
09:40   3    actually prepared for right this second.
09:40   4                 THE COURT:  Well, I think that's the --
09:40   5    what the point of this hearing is, is I think the point
09:40   6    of the hearing was that BlackBerry's unhappy with your
09:40   7    infringement contentions.
09:40   8                 And I'm not sure how you would be
09:40   9    surprised when they said, we've told them we're unhappy
09:40  10    with their infringement contentions and they don't --
09:41  11    haven't done anything about it.  And here's an example
09:41  12    of the infringement contentions that we're unhappy
09:41  13    with.
09:41  14                 I would have assumed this would have been
09:41  15    the thing you would have been most prepared for.
09:41  16                 These are your infringement contentions,
09:41  17    right?
09:41  18                 MR. KUBIAK:  Yes, sir.
09:41  19                 THE COURT:  So do you think they're
09:41  20    adequate?
09:41  21                 MR. KUBIAK:  We did think that they were
09:41  22    adequate.
09:41  23                 THE COURT:  Okay.  So then go through and
09:41  24    explain to me how this -- Ms. Mayne says she believes
09:41  25    that this is not adequate, does not articulate how
```

```
09:41  1   BlackBerry infringes -- I forget which number it was,
09:41  2   but the claim that you all are asserting against them,
09:41  3   and she says this isn't enough.
09:41  4               So walk me through it and tell me why it
09:41  5   is.  They've put you on notice that they believe it is.
09:41  6   They've asked for a hearing to tell me they think it
09:41  7   is, so this is your chance to tell me why it is.
09:41  8               MR. KUBIAK:  All right.  Give me just a
09:42  9   second.
09:42  10              So, Your Honor, essentially we get what
09:42  11  they're talking about is the mobile phone, the
09:42  12  synchronization engine.  Which is correlating a first
09:42  13  profile on a first social networking site with a first
09:42  14  contact stored in said local memory.
09:42  15              And so the picture that we're showing
09:42  16  here has the device, the mobile phone, and it is
09:43  17  showing the inbox which is the first contact.  And it's
09:43  18  also showing bringing it up, the retrieving from the
09:43  19  first -- retrieve from the first social networking cite
09:43  20  data contained in the first profile and associated with
09:43  21  the contact.
09:43  22              And you can actually see it on the next
09:43  23  slide, which unfortunately I don't have available for
09:43  24  you to see.  And yet correlate that -- well, actually
09:43  25  you can see it down below.  You see Ms. Adele Bernard
```

```
09:43   1    and then you see various social websites linked in the
09:43   2    lower portion of the screen, such as Facebook and
09:43   3    Twitter.  So that would be retrieving from a first
09:43   4    social networking site data contained in the first
09:44   5    profile, which would be Adele Bernard.
09:44   6                That's essentially it, Your Honor.  We
09:44   7    see the mobile device.  It's pulled up a first profile,
09:44   8    a contact, in its memory.  And it's associating it with
09:44   9    various social websites, social networking websites.
09:44   10               THE COURT:  Okay.  Ms. Mayne?
09:44   11               MS. MAYNE:  As you can see from this
09:44   12   slide, there's simply no indication that anything is
09:44   13   retrieved from anywhere, let alone retrieved from a
09:44   14   social networking site, or that that retrieved data is
09:44   15   somehow correlated with a contact stored in local
09:45   16   memory of a phone.
09:45   17               They simply have not described the how,
09:45   18   how does this work, and they haven't even identified a
09:45   19   synchronization engine.
09:45   20               We can't --
09:45   21               THE COURT:  Let me ask you this to make
09:45   22   sure I understand what you're saying.  We have a
09:45   23   screenshot that may show that this -- that the goal of
09:45   24   the -- for lack of a better word, the goal of the claim
09:45   25   may have been accomplished, but it -- there's nothing
```

```
09:45   1    in this screenshot that explains how the
09:45   2    synchronization engine adapted -- was adapted to
09:45   3    retrieve this in a manner that implies with the -- that
09:45   4    complies with the patent and how the association of it
09:45   5    happened.
09:45   6                  Is that what you're saying?
09:45   7                  That's what I hear you saying.  Am I
09:45   8    right?
09:45   9                  MS. MAYNE:  That's part of it.  But we
09:45  10    don't think that this screenshot of an inbox even shows
09:46  11    what the claim expects to be the desired result.  And
09:46  12    we know that BlackBerry does not retrieve data from a
09:46  13    social networking site.
09:46  14                  THE COURT:  That was what I -- what I was
09:46  15    also waiting for counsel for plaintiff to tell me, was
09:46  16    BlackBerry's role in this, which I'd like to hear from
09:46  17    plaintiff, please.
09:46  18                  MR. KUBIAK:  Yes, sir.  So essentially
09:46  19    what we're -- our viewpoint is that BlackBerry's Hub is
09:46  20    the application, software, et cetera that controls the
09:46  21    operations.  And so as we see on the mobile device
09:46  22    there, it's got local contacts.  And we've got Adele
09:46  23    Bernard highlighted here, but actually it might be
09:46  24    better to look at Mr. John Smith underneath him.
09:46  25                  And then if you go up a couple, there's
```

| | | |
|---|---|---|
| 09:46 | 1 | Mr. John Smith again.  And it's linking his Facebook |
| 09:47 | 2 | account to this particular -- on this phone.  And all |
| 09:47 | 3 | that's being done through BlackBerry Hub. |
| 09:47 | 4 | THE COURT:  I'm not sure how you can tell |
| 09:47 | 5 | that.  Maybe I just don't know enough about the |
| 09:47 | 6 | technology.  I'm not sure how you can tell what the |
| 09:47 | 7 | screenshot shows has been done through BlackBerry Hub. |
| 09:47 | 8 | MR. KUBIAK:  Well, part of this is we |
| 09:47 | 9 | have to rely on -- BlackBerry is the one that put this |
| 09:47 | 10 | screenshot out there in the marketplace.  And that's |
| 09:47 | 11 | essentially their description of it, is that it, you |
| 09:47 | 12 | know, correlates these profiles one to the other. |
| 09:47 | 13 | THE COURT:  Okay.  I'm not sure you |
| 09:47 | 14 | answered my question.  What -- in terms of your |
| 09:47 | 15 | infringement contentions, what have you articulated |
| 09:47 | 16 | showing that what we're seeing here on the screen -- |
| 09:47 | 17 | I get -- I'm assuming it's, you know, a |
| 09:48 | 18 | BlackBerry phone.  But what I'm not sure of is why -- |
| 09:48 | 19 | actually, I'm not sure it's a BlackBerry phone.  It's a |
| 09:48 | 20 | phone.  But why -- what do you have in your |
| 09:48 | 21 | infringement contentions that articulates that |
| 09:48 | 22 | BlackBerry Hub accomplishes what's in the claim? |
| 09:48 | 23 | MR. KUBIAK:  Well, this would -- it would |
| 09:48 | 24 | go down -- not particularly for Claim 1, but when you |
| 09:48 | 25 | get down to Claim 2, it's a bit that we've also pulled |

-14-

| | | |
|---|---|---|
| 09:48 | 1 | off of their website.  And it's from BlackBerry saying |
| 09:48 | 2 | people organize with their Hub plus inbox, consolidates |
| 09:48 | 3 | all of your e-mails, calendar events and social |
| 09:48 | 4 | notifications from apps like Facebook, WeChat, Twitter, |
| 09:48 | 5 | all these social websites, and syncing your BlackBerry |
| 09:48 | 6 | Hub plus inbox. |
| 09:49 | 7 | So that seems to us to indicate that it's |
| 09:49 | 8 | BlackBerry that's going out there and doing all the |
| 09:49 | 9 | synchronization between the -- your local contacts and |
| 09:49 | 10 | what's going on in the various social media contact. |
| 09:49 | 11 | THE COURT:  Ms. Mayne? |
| 09:49 | 12 | MS. MAYNE:  Nothing in this blog post |
| 09:49 | 13 | indicates that BlackBerry is retrieving data from a |
| 09:49 | 14 | social networking site.  All it shows is there are some |
| 09:49 | 15 | icons with some social networking websites such as |
| 09:49 | 16 | Facebook, as you can see. |
| 09:49 | 17 | But there's no indication that we're |
| 09:49 | 18 | actually retrieving data from a social networking site |
| 09:49 | 19 | or that that is being associated with a phone contact. |
| 09:49 | 20 | They simply haven't shown it. |
| 09:49 | 21 | And he -- to the extent he's relying on |
| 09:49 | 22 | other information that's not in the infringement |
| 09:49 | 23 | contentions, they should have been included in the |
| 09:49 | 24 | infringement contentions. |
| 09:50 | 25 | MR. KUBIAK:  Your Honor, actually that |

15

```
09:50   1    was in the infringement contentions.  It's just in
09:50   2    Claim 2.
09:50   3                    THE COURT:  Okay.  Ms. Mayne, what
09:50   4    other -- if you'd just run through, what other claims
09:50   5    are you unhappy with?
09:50   6                    MS. MAYNE:  We are unhappy with their
09:50   7    allegations with respect to all of the asserted claims,
09:50   8    which are 1 through 5, 10 through, I believe, 15 and
09:50   9    20.
09:50  10                    They all include similar deficiencies
09:50  11    with one or two screenshots with a bare assertion that
09:50  12    the reference from which the screenshot was taken
09:50  13    discloses the element.
09:50  14                    They simply do not put BlackBerry on
09:50  15    notice of how the accused product infringes.
09:50  16                    THE COURT:  Okay.  What would the -- what
09:50  17    is your suggestion I do?  Allow them to amend by a
09:50  18    certain date?
09:50  19                    MS. MAYNE:  Yes.  That was what we were
09:51  20    requesting.
09:51  21                    THE COURT:  Let me ask counsel for
09:51  22    plaintiff:  How long would you need to amend?
09:51  23                    I'm going to give you a chance to amend
09:51  24    these.  How long would you need to amend them?
09:51  25                    MR. KUBIAK:  Could you give us two weeks?
```

16

```
09:51   1              THE COURT:  I was -- I was thinking two
09:51   2   weeks.  You read my mind.
09:51   3              Is two weeks -- I'd rather give you more
09:51   4   than two weeks, though, if you can't get it done in two
09:51   5   weeks and then would ask me for more time later.
09:51   6              So if two weeks is enough, that's fine.
09:51   7   If you think you'd be better served with three weeks, I
09:51   8   want you -- I want plaintiff to have enough time so
09:51   9   that you all can't come back and say you didn't have
09:51  10   enough time.  So whatever that is, I'm happy with.
09:51  11              MR. KUBIAK:  All right.  Well, we'll take
09:51  12   the three weeks then, Your Honor.
09:51  13              THE COURT:  Okay.  You know, we're not in
09:51  14   the job of monitoring this.  So I'm going to say three
09:51  15   weeks.  You'll have three weeks from -- close of
09:52  16   business, three weeks from today to send to counsel for
09:52  17   BlackBerry your amended infringement contentions.
09:52  18              And I'll push back whatever deadlines
09:52  19   that may affect by an equivalent of three weeks.  And
09:52  20   if we have to push back the Markman by a concurrent
09:52  21   amount, then we'll do that as well.
09:52  22              So is there anything else we need to take
09:52  23   up?
09:52  24              MR. PANKRATZ:  I suppose I'll -- Your
09:52  25   Honor, Kurt Pankratz on -- at Baker Botts on behalf of
```

```
09:52    1    BlackBerry.
09:52    2              I guess I will note that plaintiff has
09:52    3    failed to file a schedule.  We've raised it with them
09:52    4    several times.  We'll work with them over the course of
09:52    5    the next few days in light of your comments here about
09:52    6    the timing, and we'll get something -- we'll make sure
09:52    7    as the defendant to get something on file if they don't
09:52    8    do it.
09:52    9              THE COURT:  Thank you very much.  I
09:52   10    appreciate that.
09:52   11              Anything else, guys?
09:52   12              MR. RAMEY:  Yeah.  Real quick, Your
09:52   13    Honor.  This is Bill Ramey and I won't take but a
09:52   14    second.
09:52   15              I believe we have a draft scheduling
09:53   16    order that we've sent over to them.  But that's what
09:53   17    the dispute's about, getting a final copy back.  But
09:53   18    we'll get that taken care of no later than today, Your
09:53   19    Honor.
09:53   20              THE COURT:  Okay.  I'm optimistic.  So I
09:53   21    hope you guys have a wonderful weekend.  And if you
09:53   22    have any other issues -- I think this is Beth's case,
09:53   23    so if you have any other issues, please let Beth know.
09:53   24    Have a good day.
09:53   25              (Hearing adjourned.)
```

```
 1   UNITED STATES DISTRICT COURT  )
 2   WESTERN DISTRICT OF TEXAS     )
 3
 4
 5              I, Kristie M. Davis, Official Court
 6   Reporter for the United States District Court, Western
 7   District of Texas, do certify that the foregoing is a
 8   correct transcript from the record of proceedings in
 9   the above-entitled matter.
10              I certify that the transcript fees and
11   format comply with those prescribed by the Court and
12   Judicial Conference of the United States.
13              Certified to by me this 30th day of May
14   2022.
15
                              /s/ Kristie M. Davis
16                            KRISTIE M. DAVIS
                              Official Court Reporter
17                            800 Franklin Avenue
                              Waco, Texas 76701
18                            (254) 340-6114
                              kmdaviscsr@yahoo.com
19
20
21
22
23
24
25
```